IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION
Case No. ___2:21-cv-41-JM___

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 0 2021

**JAMES W. McCORMACK, CLERK**
By:_____
                    DEP CLERK

COREY A. THORSON                                                    PLAINTIFF

VS

UNITED STATES OF AMERICA;

    Serve:  Merrick B. Garland
            Attorney General
            US Department of Justice
            950 Pennsylvania Avenue, NW
            Washington, DC  20530-0001

This case assigned to District Judge ___Moody___
and to Magistrate Judge___Harris___

FEDERAL BUREAU OF PRISONS;

    Serve:  Michael Carvajal
            Director of Federal Bureau of Prisons
            320  First Street, NW
            Washington, DC  20534

FCI FORREST CITY LOW                                              DEFENDANTS

    Serve:  DeWayne Hendrix
            1400 Dale Bumpers Road
            Forrest City, AR  72235

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

Comes the plaintiff, Corey Thorson, *pro se,* and for his Complaint as against each

of the defendants, jointly and severally, states and alleges as follows:

1.    The parties to this Complaint:

    A.    The plaintiff

        **Corey Thorson**
        **98 Boaz Cemetery Road**
        **Boaz, KY  42027**

B.    The defendants

**United States of America**
**Federal Bureau of Prisons**
**FCI Forrest City Low**

## II.  BASIS FOR JURISDICTION

Under 42 USC §1983, the plaintiff is suing federal officials for the depravation of rights privilege and immunities secured by the United States Constitution and by federal law.    Specifically, pursuant to the Eighth Amendment of the United States Constitution, and *Bivens v. Six unnamed agents of Federal Bureau of Narcotics,*  403 U.S. 388 (1971), the plaintiff may sue federal officials for violation of certain constitutional rights.    This action is being brought against federal officials, i.e., a *Bivens* claim.

Section 1983 allows the plaintiff to allege claims involving the 'depravation of any rights, privileges, or immunities secured by the Constitution."    42 U.S.C. §1983.    The Complaint is being filed against federal officials for their deliberate indifference; length of delay; detrimental effect; and resulting pain and permanent impairment caused by their failure to timely and properly provide medical care to the plaintiff has a result of a serious personal injury he sustained involving an injury to his ankle involving an Achilles tendon injury.

The plaintiff alleges that under *Bivens*, his constitutional rights have been seriously impaired.    These constitutional rights include the right to prompt and proper medical care while he as an inmate under the federal courts in the Federal Bureau of Prisons.

## III.  PRISONER STATUS

The cause of action accrued as the plaintiff was a convicted and sentenced federal

2

prisoner.    Since the occurrences complained of, he has been released and is presently on  active probation.

## IV.    STATEMENT OF CLAIMS

On June 1, 2017, the Federal Bureau of Prisons took the plaintiff into custody.    At that time, the plaintiff had already been injured and was in need of medical emergent care.    United States District Judge Hon. Thomas Russell ordered that the plaintiff be provided emergent medical care and be placed in a facility where medical treatment was available.

Despite the rulings, the plaintiff was eventually transferred to FCI Forrest City in Forrest City, Arkansas.    Despite needing emergent medical care, the plaintiff was not afforded said care.   The actions of the prison officials amount to a violation of the plaintiff's Eighth Amendment rights, including a deliberate indifference to his health and safety. The length of delay was unconscionable.    The delay has a detrimental effect, resulting in permanent injury and excruciating pain to the plaintiff.    As a result oft these actions, the plaintiff filed a Complaint for relief under the Federal Tort Claims Act, 28 U.S.C. 2671 and 28 U.S.C. 1346.    A copy of that Complaint is attached hereto as Exhibit A.  Each and every allegation as against each of the defendants, United States of America, Federal Bureau of Prisons, and FCI Forrest City Low are incorporated herein by reference as if set out at length herein.       The Federal Tort Claim of this plaintiff was denied as evidenced by Exhibit B.  As such, all administrative remedies available to the plaintiff have been exhausted.

The claims that the plaintiff bring as against the United States are for it to be held vicariously liable for the neglect or for the wrongful acts committed by federal employees acting within the course and scope of their employment.   28 U.S.C. §1346.

At the time the plaintiff was sentenced by the United States District Court for the Western District of Kentucky, he had previously suffered a torn Achilles tendon.   It was estimated that 90 – 95% of the tendon had been torn.   While the medical condition which existed was not life threatening, it was certainly a progressive condition that significantly deteriorated because of the lack of care provided by the United States of America, the Federal Bureau of Prisons and FCI "Low" Forrest City, Arkansas.   The resulting lack of care and reckless indifference by the Federal Bureau of Prisons and FCI "Low" Forrest City, Arkansas caused the plaintiff to suffer significant pain and discomfort; permanent impairment; and loss of mobility.   To illustrate the reckless indifference and conscious disregard, it should once again be noted that the United States District Court for the Western District of Kentucky, in sentencing the plaintiff, stated that he was to be placed in a "medical facility. . .as soon as possible for treatment of his immediate leg injury.   The Federal Bureau of Prisons ignored that request and treated the plaintiff with reckless indifference.

The Federal Bureau of Prisons for which the United States of America is vicariously liable, as well as FCI "Low" Forrest City, Arkansas, both were aware of the need for immediate medical treatment but both continued to create a situation of deliberate indifference.   The plaintiff's condition as obvious and serious and needed medical treatment.   To delay medical treatment caused injury and harm to the plaintiff.

The United States of America, the Federal Bureau of Prisons and FCI "Low" Forrest City, Arkansas failed to follow the District Court's recommendation which cited a serious medical need.    The actions of the defendants were caused by a deliberate indifference.    The plaintiff had a sufficiently serious medical need and it was obvious that he needed medical treatment.

The Eighth Amendment to the United States Constitution provides people who are incarcerated with the constitutional right to receive adequate medical care while they are in custody.    The United States of America, the Federal Bureau of Prisons and FCI "Low" Forrest City, Arkansas denied the plaintiff access to adequate medical care and actually withheld medical care that had been deemed necessary.    The delay in administering pain medication as well as active treatment for his condition has caused the plaintiff serious harm both in permanent impairment, as well as in pain and suffering.

## V.  INJURIES

As a result of the delay in medical treatment, the plaintiff suffered physical injuries, resulting pain and permanent injuries because of the delay in medical treatment.    Had medical treatment been provided earlier, the injuries would not have been near as severe.

## VI.  RELIEF

It is respectfully requested that this Court award to the plaintiff damages as a result of the occurrences.    The amount of damages are within this Court's jurisdictional limit. The basis for these claims include the pain and suffering, permanent injuries, and permanent impairment caused by the delay in medical treatment in an amount not less than two million dollars.

5

## VII.  EXHAUSTION OF THE ADMINISTRATIVE REMEDIES

## AND ADMINISTRATIVE PROCEDURES.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. §1997e(a) requires that "[N]o action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility and such administrative remedies as are available are exhausted.

Administrative remedies are also known as grievance procedures.    All administrative procedures have been exhausted.    The claims presented herein arose arose while the plaintiff was confined in a prison.    The prison was FCI Forrest City, AR. The denial of his Eighth Amendment rights was occasioned by officials at the FCI Forrest City prison.

The plaintiff has filed under the Federal Tort Claims Act, Title 28, U.S.C. §2672 et seq.    That claim was denied by Candice Geller, Deputy Regional Counsel.    A copy of her correspondence dated October 20, 2020 giving the plaintiff six months within time to file a claim with the United States District Court is attached as Exhibit B.

Each and every grievance procedure of the facility was exhausted.

## VIII.  CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief, that the Complaint:

1.    Is not being presented for improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2.    As supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law;

3.      The factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4.      The Complaint otherwise complies with the requirements of Rule 11.

I agree to provide to the Clerk's Office with any changes to my address where case related papers may be served.    I understand that my failure to keep a current address on file with the Clerk's Office may result in a dismissal of my case.

Date of signing:  April 18, 2021.

COREY THORSON

STATE OF KENTUCKY

COUNTY OF McCrackin

Subscribed, sworn to, and acknowledged before me by COREY THORSON to be his free act and deed, this _18_ day of April 2021.

My Commission expires: July 7, 2021

NOTARY PUBLIC, STATE-AT-LARGE

7

## UNITED STATES DISTRICT COURT

| | |
|---|---|
| Corey A. Thorson<br>          Plaintiff, | ) |
| | ) |
|   vs. | ) |
| 1. The United States of America | ) |
| 2. Federal Bureau of Prisons "FBOP" | ) |
| 3. FBOP DSCC - Grand Prarie | ) |
| 4. FCI "low" Forrest City<br>   Michelle Wingo<br>   Officer J. Pruett | ) |
| 5. FMC Fort Worth<br>   SIA - Monica Anderson<br>   Counseler M. Towchik | ) |
| 6. FCI Morgantown<br>   Dr. McCabe<br>   DTS C. Zemmerick<br>   Captain R. Fullen | ) |
| 7. Residential Re-Entry Managers<br>   Michelle Fulgum<br>   Stacey Rimmer<br>   Mike Connell | ) |
| 8. FCI Ashland, Unit Mgr. M. Lester,<br>   HSA Mr. Baier, Counselor T. Todd,<br>   Dr. Rios, Case Mgr. J. Patton | ) |
|          Defendants. | ) |

## Initial Statement of Claims

Comes, Plaintiff Corey A. Thorson, BOP inmate #18601-033. Plaintiff Thorson is a layman at law. Plaintiff respectfully request the District Court to construe said complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2nd 652 (1972), the grounds supporting their entitlement to relief require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl.

1

EXHIBIT A

Corp v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Plaintiff brings claims under; the Federal Tort Claims Act ("FTCA") 28 U.S.C. 2671 & 28 U.S.C 1346 and Bivens 42 U.S.C §1983 brought in reference to:

1. Deliberate indifference to serious medical needs
2. Violation of Constitutional rights
3. Discrimination & equal protection claims
   a. 42 U.S.C. §§1981, 1985, and 1986

## Standards

A. Medical Care Claims

  1. FTCA Claim

    The Plaintiff understands under the "Federal Tort Claims Act" (FTCA), the United States may be held vicariously liable for neglect or otherwise wrongful acts committed by Federal employees acting within the scope of their employment. See 28 U.S.C. §§1346, 2671-2680; Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 795 (8th Cir. 1998). While a FTCA claim can not be brought against an individual Federal employee; Knowles v. United States, 91 F.3d 1147, 1150 (8th Cir. 1996) a Bivens Constitutional claim can.

B. Bivens Constitutional Claims

  1. Official Capacity Claims

    A "Bivens" action must be brought against the "individuals" who allegedly violated Plaintiff's Constitutional rights. Correctional Services Corp. v. Malesko, 534 U.S. 61, 69-72, 122 S.Ct. 515, 151 L. Ed. 2nd 456 (2001). Therefore Plaintiff also brings claims against the Federal officers in their official and individual capacities; citing any official capacity claims is thus barred by "sovereign immunity," Buford v. Runyon, 160 F3d 1199, 1203 (8th Cir. 1998).

2

Plaintiff understands it is well settled a "Bivens" action cannot be prosecuted against the United States and its agencies because of sovereign immunity (2019 U.S. Dist. Lexis 6). Plaintiff will state in his 1983 claim two elements: (1) a deprivation of rights secured by the Constitution of Laws of the United States and ; (2) that the deprivation was caused by a person acting under color of State law. Carl v. Muskegon Cnty., 763 F.3d 592, 595 (6th Cir. 2014).

C. Racial Discrimination and Equal Protection Claims
   1. Thorson will prove the claims under this heading are "legally and factually" related to his medical indifference, claims that are "race related," and a "racially hostile climate" exist throughout the Bureau of Prisons ("BOP").

## Plaintiff Background

A. Background
   Plaintiff is a 44 year old white male. He is a "white-collar" inmate. (See Exhibit 1). Plaintiff was sentenced to Federal prison for a total term of 51 months. At the time of sentencing the Plaintiff was injured. The injury consisted of a "serious medical need," "torn Achilles tendon 90% to 95% tear. The injury was classified by Dr. Childress as "non-emergent." Non-emergent being classified by the Bureau of Prisons as;

   **Medically Necessary - Nonemergent.** Medical conditions that are not immediately life-threatening but that without care the inmate could not be maintained without significant risk of serious deterioration leading to premature death, significant reduction of the possibility of repair later without present treatment, or significant pain or discomfort that impairs the inmate's participation in activities of daily living.

United States Marshal, Eric Waterhouse was in contact with

3

the Bureau of Prisons regarding the Plaintiff's injury, as Plaintiff was in custody at the time of the injury, (April 18, 2017).

As the Judgement in Committment order indicates on page 3 of 8 (Exhibit 1), the court made a recommendation to the Bureau of Prisons as well. The court "capitalized and bolded" portions of this recommendation, stating: "The Defendant be placed in a MEDICAL FACILITY, SUCH AS, FMC Lexington AS SOON AS POSSIBLE, FOR TREATMENT OF HIS IMMEDIATE LEG INJURY, Defendant shall provide medical records to facility."

The court made another recommendation:
   "The Defendant be placed in a facility wherein he may participate in Residential Drug Abuse Treatment Program (RDAP) for treatment of narcotic addiction and/or drug/alcohol abuse and be placed in a facility that is near his family."

Plaintiff led a active lifestyle. Plaintiff spent his time golfing, racing mountain bikes, racing dirt bikes, hunting, fishing, and exercising. Plaintiff worked with a trainer while racing. Plaintiff is also the father of (2) active children.

B. Analysis of Case Law - Plaintiff Statement of Claims.
   Thus, the Defendant's lack of willingness to follow District Court recommendations created a claim of deliberate indifference, clearly satisfying the (2) prong test, both objective and subjective components. It is well established that "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing delay creates [a] Constitutional infirmity." See Darrah, 865 F.3d at 372 quoting Blackmore, 390 F.3d at 899.

4

### Statement of Claims

A. Defendants - The United States of America
   - Federal Bureau of Prisons
   - FBOP Designation Sentence & Computation Center
   - FCI F.C. (Low), FCI Morgantown, FCI Ashland

As stated, the Defendant(s), The United States of America, FBOP (locations above), FBOP DSCC failed to follow the District Courts recommendation, citing a "serious medical need," labeled as "nonemergent."

On June 1st, 2017 the Federal Bureau of Prisons took the Plaintiff into custody. At the time Plaintiff was wearing a protective walking boot. During transport Plaintiff was forced to remove the boot, citing threats during transport. Plaintiff was shackled on the torn Achilles tendon, forced to walk up/down stairs, and taken to the Federal Transport Center in Oklahoma City, Oklahoma. Plaintiff was not provided pain medication during this (16+) hour transit, from bed to bed.

During intake (approx. 7 p.m.) the Plaintiff was given Tylenol/pain medication. The Plaintiff requested a "walking boot" due to the Achilles tendon tear. The Plaintiff attempted to show intake personnel the injury and swelling. The Plaintiff was quickly cut-off by intake personnel stating "You won't be here long due to your injury, get upstairs to your cell." The Plaintiff was placed upstairs, cell 406, on a top bunk. The Plaintiff was in severe pain, with severe swelling/bruising.

The Plaintiff spent (19) days at the OKC Transit Center. Finally after several days (reflected in the Defendants medical records) and within the FBOP electronic request to staff, the Plaintiff was provided a new walking boot, after numerous "sick-call" requests. However Plaintiff was forced to remain living upstairs, on a top bunk.

5

As previously stated [t]he Court uses a two-prong test to assess a deliberate indifference claim. Burgess, 735 F.3d at 476 (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). First, a court must "determine whether the plaintiff had a 'sufficiently serious medical need' under the objective prong. Id. (citing Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." Id. (citing Blackmore v. Kalamazoo Cty., 390 F.3d 890, 897 (6th Cir. 2004). Second, the court determines "whether the defendant had a 'sufficiently culpable state of mind' in denying medical care under the subjective (2019 U.S. Dist. LEXIS 9) prong." Id. (citing Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000). The requisite culpability for a successful deliberate indifference claim demands a showing of something above "mere negligence," yet below "specific intent to harm or knowledge that harm will result." Id. (citing Farmer, 511 U.S. at 835.) "Under Farmer, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Blackmore, 390 F.3d at 896 (quoting Farmer, 511 U.S. at 837). The defendant's subjective "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs" is axiomatic to the deliberate indifference state of mind. Id. (quoting Horn v. Madison Cty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994)).

On June 19th, 2017 the Plaintiff was transferred to FCI Forrest City "low", in Forrest City, Arkansas. Plaintiff was again forced to remove his protective walking boot, and shackled on his bare skin, injured Achilles tendon. Upon arrival, during intake the male nurse, RN B. Wooten verbally stated "We have no information regarding your injury." I was allowed to obtain the boot until I saw medical for my BOP "14-day" assessment.

6

Plaintiff was assigned to a "top bunk." Late June 2019 Plaintiff saw both Dr. Woodard and PA Wingo. After review of Plaintiff's medical records, both Dr. Woodard and PA Wingo both made "consultation request" to BOP region for Plaintff's injury. Dr. Woodard made the statement "I'm making notes in case litigation arises." Dr. Woodard after examining the injury, time lapse, missed surgical dates knew as a professional litgation was inevitable. Dr. Woodard submitted a transfer request to FMC which the BOP DSCC denied. **AT THIS TIME, JUNE 2019, THE PLAINTIFF BEGAN TO UTILIZE "ELECTRONIC REQUEST TO STAFF." AS A INSURANCE PROFESSINAL PLAINTIFF FELT NECESSARY TO PROTECT HIMSELF, CREATE A PAPER TRAIL** just in case litigation arose. It should be disclosed Plaintiff printed, copied and mailed all staff requests home. Said requests will be brought during discovery and depositions. See Exhibit (7) - 1 page. The court will find Defendants PA Wingo and Dr. Woodard agree with the courts, the Plaintiff should have been at a FMC.

B. 1983 Defendants - PA Michelle Wingo
                    Officer James Pruitt (introduced in "Statement of Claims.")
                    Continuation of FTCA Defendants FBOB, FCI F.C. (low), FBOP DSCC - Grand Prairie The United States of America

"Early" July 2017 the Plaintiff's walking boot broke, the straps burst. Plaintiff **"IMMEDIATELY"** visited medical. PLaintiff was advised by PA Wingo, "We do not have another walking boot. Even if I requested one, it would be weeks before it was approved, if it was approved at all. Walk the best you can without it, let's wait and see what region says about the consultation request and transfer."

Obviously, at this point both the BOP and PA Wingo "had" committed Constitutional violations against the Plaintiff. However, this gets much worse from here.

7

Plaintiff returned to the unit, sent a "electronic staff message" to Health Services, Attn: Dr. Woodard and PA Wingo. As previously mentioned the court uses a two-prong test to assess a deliberate indifference claim. Burgess, 735 F.3d at 476 (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L. Ed. 2nd 811 (1994)). It was well established the Plaintiff had a "serious medical need." Satisfying the "objective prong." Id. (citing Harrison v. Ash, 539 F. 3d 510, 538 (6th Cir. 2008)). A medical need so serious a "lay person" would realize. In addition the prison official new of the need yet deliberately disregarded it. Id.; See Farmer v. Brennan, 511 U.S. at 837; Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285, 50 L. Ed. 2nd 251 (1976). Per the U.S. Marshal's office and per the Plaintiff's judgement in commitment order, not only was the BOP Designation Center aware of the Plaintiff's serious medical needs, FCI Forrest City, PA Michelle Wingo, and Dr. Woodard were aware, citing; provided diagnostic test (MRI) and physician's notes, surgical notes/dates, etc al...

Over the next (3) weeks the Plaintiff visited sick-call due to pain, swelling, and what felt like additinal tearing of his Achilles tendon and calf muscle. Plaintiff's pain scale was a 10+/10. Plaintiff was requesting a new walking boot or repair of his. Neither occured. Around the end of July, Plaintiff visited sick-call again. PLaintiff was provided a "used walking boot" with what appeared to have puss, infected skin, hair, and pubic hair in it. PA Wingo advised Plaintiff in writing (electronic message to staff) that shewas aware of the boot's condition and stated Plaintiff "could have it washed with medical's laundry." This statement was weeks after Plaintiff was provided the used boot, but refused to wear it. See Exhibit 6 - 3 pages.

It should be noted at this point the Plaintiff was copying and mailing staff messages/responses home. In addition, Plaintiff

8

was contacting his sentencing court in Western, Kentucky Attn: Judge Thomas B. Russell regarding this issue/treatment. The District Court also ignored Plaintiff. Plaintiff will provide documents for discovery, depositions, at trial. Due to the above, the Plaintiff started the BOP's Administrative Remedy process. Please note, Plaintiff exhausted all remedies per BOP policy. Plaintiff is in possession of said remedies which will also be provided during discovery and depositions. In addition, it shold be noted Plaintiff has continued to utilize the BOP Administrative Remedy process, following policy. This process has been utilized and exhausted per BOP policy at each Federal institution listed as a defendant. Finally, it should be noted the Plaintiff has been denied access to the BOP Administrative Remedy Program on 2 occasions. Again, the Plaintiff has documentation to be provided during discovery and depositions, relating to the denials. Documentation includes recorded conversations, photographs, staff messages, and e-mails. All administrative remedy documents have been mailed certified, so they could be tracked. Plaintiff is being released from BOP custody, without supervised release in June 2020. Plaintiff will amend the complaint/motion the court to include the administrative remedies. Clearly all were "completely exhausted."

In early August 2017, around August 11th, 2017 the Plaintiff was transported to an orthopedic surgeon, Dr. Sokoloff in Memphis, TN. Plaintiff was called to R & D , aggressively shackled on the injury/bare skin. The shackles were extremely tight. This is when the verbal assualt commenced on Plaintiff. Plaintiff was subjected to an extreme case of professional misconduct/threats. As this is an "open investigation" citing DOJ-OIG/BOP, Plaintiff respectfully requests the court direct the Plaintiff with an "Order on How to Proceed With Service," pertaining to Exhibit 2 - pages(3), and defendant James Pruett.

During the August 11th, 2017 appointment, the Plaintiff received

9

a new walking boot from Dr. Sokoloff. It was also obvious as to the Plaintiff's injury, per Dr. Sokoloff's medical records.

On August 18th, 2017 Plaintiff was taken to Forrest City Medical Center for an MRI. The results were that Plaintiff's injury had progressed. The physician was concerned with the MRI results. This report, Exhibit (3), will be discussed during deposition of expert witnesses. Note: Plaintiff medical transfer to a FMC was denied. It is well documented through Plaintiff's medical records and staff messages all defendants, including PA Wingo and Officer Pruett were "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; see also Wilson, 501 U.S. at 302-03. Clearly the Plaintiff has and will demonstrate that all Defendants including PA Wingo and Officer Pruett acted with "requisite intent," both acted with "deliberate indifference" creating a substantial risk that the prisoner (Plaintiff) would suffer serious harm, and Plaintiff did. Farmer, 511 U.S. of 834; Wilson, 501 U.S. at 303; Dominguez v. Corr. Med. Servs., 555 F.3d 543, 550 (6th Cir. 2009). This was obviously relayed to the Defendants BOP, DSCC, and F.C. Low.

After the MRI Plaintiff was again taken to Dr. Sokoloff in Memphis, TN. Dr. Sokoloff advised Plaintiff "he did not feel comfortable completing the surgical procedure himself, and would be requesting a foot specialist assist him during the procedure." Dr Soroloff went on to explain "Due to the time which has passed it was going to be a complex surgery." This will be expanded upon during depositions, along with expert witnesses.

Plaintiff was returned to the institution, Plaintiff documented the visit and conversation within the "Electronic Message to Staff." A couple days later Plaintiff was called to medical by PA Wingo. Plaintiff was advised the procedure was approved, however, the addition of the specialist "was not." Plaintiff

10

immediately returned to his unit, sent another electronic staff message to PA Wingo confirming the conversation. PA Wingo acknowledged by responding. In turn, Plaintiff advised he did not feel comfortable, and would not have the procedure until the specialist was approved. Again, a couple days passed, Plaintiff was called to medical by PA Wingo. The BOP had reversed its decision, allowing the specialist after speaking to Dr. Sokoloff.

Early September 2017 Plaintiff was taken to Memphis, TN for a surgical repair of his Achilles temdon. Plaintiff met with both Dr. Sokoloff and his specialist before the procedure. After the procedure Plaintiff was returned to FCI Forrest City Low - general population. Plaintiff was provided a wheel-chair. Dr. Sokoloff wrote a pain medication prescription. This will be reviewed during discovery and depositions. However, as Plaintiff's medical records clearly indicate, the medication dose and activity was decreased from 3x per day to 2x per day. In addition, it is well documented within Plaintiff's records that he was not given any pain medicaiton over (14) hours after leaving the hospital.

It is beyond question that the Eighth Amendment provides people who are incarcerated with a constitutional right to receive adequate medical care while in custody. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); Estelle, 429 U.S. at 103-04; Blackmore v. Kalamazoo Cty., 390 F.3d 890, 895 (6th Cir. 2004). In the Supreme Court's words,

> elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his nedical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," the evils of most immediate concern to the drafters of the [Eighth] Amendment. Estelle, 429

11

U.S. at 103 (quoting In re Kemmler, 136 U.S. 436, 447, 10S. Ct. 930, 34 L. Ed. 519 (1890)).

The delay in administering the pain medication along with the  days to come Plaintiff was in severe pain as his records indicate. Plaintiff described the changing of that prescription from 3x per day to 2x per day along with the living conditions was "physical torture." With a open wound fresh out of surgery, Plaintiff was given a lower bunk with intent, the intent to harm. Plaintiff was placed directly across from the bathroom where the light shines all night and the floor stays wet, not damp, wet! As the medical records and electronic staff messages reflect; the failure to place PLaintiff at the current facility for this procudure, the correct facility to administer the proper medication was wreckless by the BOP DSCC in Grand Prairie, TX. It cost Plaintiff tremendously, as you will later learn.

It should be noted, while designated at FCI Forrest City Low the Defendants completely ignored their own  policies and procddures as outlined in Program Statement P6270.01. This will be reviewed during discovery and depositions. Middle September 2017 Plaintiff was called to the Lt.'s office. PLaintiff was again transported to Dr. Sokoloff in Memphis, TN. Plaintiff's stitches were removed and he was advised to start moving his foot, use "touch down" crutches. Dr. Sokoloff described the difficulty of the surgery, how significant damage was done due to delays and stretching of the tendon. That is the last time the PLaintiff spoke to or saw Dr. Sokoloff, his (10) day post op.

In early October 2017 Plaintiff learned he was being transferred to a medical center for physical therapy. Plaintiff learned he was being sent to FMC Fort Worth, TX. When Plaintiff argued the designation his case manager stated "This is what happens when you write staff up," and he laughed. Plaintiff's "JNC" was again ignored by the Office of Designation. Plaintiff

12

was transferred as a normal inmate, the BOP, BOP inmates, and BOP facility ignoring program statement P6270.01. Plaintiff was shackled. Plaintiff suspects this is where his Achilles re-tore.

C. Defendants - FMC Fort Worth
                 SIA Monica Anderson
                 SIS/Counselor M. Towchik
                 Continuation of 1983 Defendants PA Michelle Wingo
                    Officer James Pruitt
                 Continuation of FTCA Defendants FCI F.C. Low,
                    FBOP DSCC - Grand Prairie, The United States
                    of America

A few days later Plaintiff arrived at FMC Fort Worth, Texas. Plaintiff was placed upstairs in a unit just a few days after Achilles tendon surgery. Plaintiff was in excruciating pain (10+/10). Plaintiff documented his issues with "Electronic Request to Staff" and Plaitiff visited sick call. Things were bad. Plaintiff had no handicapped shower. Plaintiff was forced to walk up stairs and shower standing. Plaintiff slipped, Plaintiff knew at that point his Achilles was torn again, tearing it in transit was one thing the unsafe conditions just compounded it. Plaintiff began visiting sick call, requesting a MRI, pain medication. Plaintiff was provided proper pain medication 3x per day. Plaintiff was given an Achilles tendon brace, and placed in line for "MRI consult." This is November 2017. In January 2018 Plaintiff saw the foot specialist, Dr. Motley. Dr Motley performed an exam, stated Plaintiff needed an MRI. The rest of January passed, February passed... March 1st, 2018 Plaintiff was called to the administration building. The office of the Inspector General - Department of Justice was waiting on Plaintiff. Plaintiff was placed against the wall, read his rights.

Before proceeding it should be noted: January 12, 2018 Plaintiff reported to SIS/Counselor Towchik an inappropriate relationship

13

between an officer and an inmate. The inmate was dealing drugs brought in by the officer. Plaintiff started the entire investigation with SIS/Counselor Towchik. From January 12, 2018 to March 1, 2018 Plaintiff reported to SIS/Counselor Towchik. SIS/Counselor Towchik made several promises: 1) Shipping Plaintiff to FMC Lexington for treatment and to be close to his family; 2) Moved up in the MRI line; 3) Preferred bedding - which happened. March 1, 2018 plaintiff was locked in the SHU (Special Housing Unit). As his records indicate, he was placed under investigation - being punished for telling the truth. Around March 1, 2018 the officer was arrested and charged. The officer was later convicted and is now serving Federal prison time. While there was (2) seperate officers involved (as Plaintiff told the DOJ-OIG) the other remained on the compound. The other officer worried, visited Plaintiff in the SHU, threatened him for talking, threatened his family. Plaintiff informed staff he was punished further with delays in treatment. Plaintiff was taken off the March 2018 MRI list, with intent to delay. In April 2018 Plaintiff had the MRI he'd been requesting (6) months. Both reflected in his medical records.

Attached are Exhibits (4 & 5) confirming the re-tearing of Plaintiff's Achilles tendon. Even with these records Plaintiff was placed on a top bunk in the SHU. During Plaintiff's SHU time things took a big turn. SIS/Counselor M. Towchik came to Plaintiff's door and Plaintiff asked "Why am I in the SHU with my medical?" Counselor Towchik responded while smiling "It's part of **the game**." Plaintiff was in severe pain, been lied to, and now he was locked up, hurting.

It became clear, SIA Monica Anderson, a black woman, was leading a charge against the Plaintiff. The racism, the PREA (Prison Rape Elimination Act), the verbal assualt started by Towchik, Anderson, and numerous FMC staff commenced. Plaintiff was called a "fag;" "gay," "queer." Existence of a clear

14

and persistent (2019 U.S. Dist. LEXIS 43) pattern of illegal activity.

Plaintiff reported PREA violations 5324.12 to SHU Lieutenant. The entire time at FMC Fort Worth (7 months), Plaintiff only received (3) physical therapy treatments. Plaintiff was kept in the SHU by SIA Monica Anderson a month longer than any of the "African-American inmates." The African-Americans were shipped. Plaintiff was removed from the MRI list by SIA Anderson. Officer Alveraz in the SHU called Plaintiff a "fag, gay, you swing both ways Thorson." This was reported to the OIG and SHU Lieutenant in accordance with BOP policy 5324.12. Again due to documentation at home, this will be addressed during discovery and depositions, along with ammended complaint, "if need be."

**Existence of a clear and persistent (2019 U.S. Dist. LEXIS) pattern of illegal activity**
The "illegal activity" at issue here is activity that violates the Eight Amendment's prohibition on deliberate indifference to the serious medical needs of an incarcerated person. See Estell, 429 U.S. at 104-105. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008) (quoting Blackmore, 390 F.3d at 897). In Blackmore, the Sixth Circuit recognized that "the seriousness of a prisoner's medical needs 'may **also** be decided by the **effect** of delay in treatment.'" 390 F.3d at 897 (emphasis in original)(quoting Hill v Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 118 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). In Westlake v. Lucas, for example, the Sixth Circuit held that a plaintiff states a cause of action for deliberate indifference to a serious medical need where he or she "alleges that prison authorities have denied reasonable requests for medical treatment

15

in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." 537 F.2d 857, 860 (6th Cir. 1976).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant (2019 U.S. Dist. LEXIS 44) to second guess medical judgments and to constitutionalize claims which sound in state tort law." Darrah v. Krisher, 865 F.3d 361, 372 (6th Cir. 2017) (alteration omitted) (quoting Westlake, 537 F.2d at 860 n.5). Nevertheless, it is well established that "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing delay creates [a] constitutional infirmity." Darrah, 865 F.3d at 372 (alterations in original) (quoting Blackmore, 390 F.3d at 899); see also Estelle, 429 U.S. at 103 (recognizing that "denial of medical care may result' in pain and suffering[,] which no one suggests would serve any penological purpose")/ The Sixth Circuit has also held that a "decision to provide and 'easier and less efficacious treatment' may suffice to establish deliberate indifference." Darrah, 865 F.3d at 372 (quoting Warren v. Prison Health Servs., Inc., 576 App'x 545, 552 (6th Cir. 2014)).

Again, (7) months designated to FMC Fort Worth, (3) physical therapy appointments. The African-American inmates left well before the Plaintiff. One (1) MRI, one (1) critical physician.

In late April Plaintiff saw specialist/podatrist, Dr. Motley again. Dr. Motley read the April 2018 MRI, discussed the injury (which he was very cirtical of the BOP), and advised Plaintiff he was clear for transfer, although recommended verbally his injury was sensitive/questionable.  With Plaintiff's medical records indicating a possible tear and fluid he was again shackled on his skin. There was not a doubt the tear became worse. Plaintiff

16

felt it ripping apart, as reported within his medical records the pain was 10+/10 again.

May 2018 Plaintiff arrived at FCI Morgantown, some 600 miles from home with a torn Achilles, in pain. FCI Morgantown was a "dangerous designation for me." It is in the mountains, very hilly. Plaintiff was placed in a unit at the top of the hill. The pain just to get to his unit was more than he could bare. Plaintiff visited sick call in early May 2018. He was given another brace, advised he could have ibuprofen or Tylenol, nothing stronger. Plaintiff again used Electronic Request to Staff, creating a "paper trail" to document his medical care. When Plaintiff advised PA Corbin he would write her up, file an administrative remedy all hell broke loose within his RDAP treatment. Medical did offer a different medication for nerve pain, but that was it. The pain from then til now is unbearable.

D. Defendants - FCI Morgantown
        DTS C. Zemmerick
        Dr. McCabe (RDAP)
        Captain R. Fullen

When Plaitiff sent the Electronic Request to Staff, stating he would start the Administrative Remedy process again, he was disciplined in RDAP. Plaintiff was pulled up by DTS Satterfield. He allowed a verbal attack on Plaintiff's medical care, his rights as an inmate (medical), and his so called entitlement. RDAP quickly became a hostile environment for him, with intimidation.

It should be noted, the Plaintiff is in possession of "factual support." The Plaintiff understands he can not bypass the Federal Rules and litigate his claims by the way of motions and declarations. The Plaintiff was able to secure documentation in addition to verbal agreement from FCI Morgantown Correctional Officers that the officers would provide depositions as to DTS Zemmerick and Captain Fullen's conduct. Plaintiff also has a 3rd witness to this.

17

DTS Zemmerick, Dr. Mc Cabe, and Captain Fullen displayed the existence of a clear and persistent "pattern of illegal activity." Between the psychology notes, RDAP warnings, "hindering & delay of legal communication" and the fact Plaintiff told on a BOP officer now serving Federal prison time, the Defendants were pissed and vindictive. The Defendant's listed above custom was the "moving force" or direct casual link in the Constitutional deprivation. Thomas v. City of Chattanooga, 398 F.3d 426 (6th Cir. 2005). FCI Morgantown is named as a defendant as well, the prison as a whole has a inmates name if one is in RDAP. Example: Plaintiff telling PA Corbin he would file an Administrative Remedy as his right, PA Corrin e-mailing that to DTS Zemmerick and Dr. Mc Cabe immediately. Then Plaintiff got in trouble. Plaintiff's Achilles tear over (15) months at this point, what does medical or his medical situation have to do with RDAP?

Furthermore, DTS Zemmerick and Dr. Mc Cabe Prevented Plaintiff from e-mailing his attorney through his mother. Plaintiff was given a RDAP warning, belittled by DTS Zemmerick. DTS Zemmerick refused to allow Plaintiff, refused to respond using the "Electronic Request to Staff." Again, Plaintiff can prove all the above through documentation, affidavits, and depositions. Plaintiff psychology notes, enterend by Zemmerick were mostly negative. Plaintiff was in constant contact with counsel over his criminal case, the dirty BOP officer's case, and the empty promises lies from SIS/Counselor Towchik and BOP executives. Plaintiff has a 4th witness whom advised he is willing to testify. This will be another BOP employee.

Plaintiff went to medical "**scared**, **afraid** to discuss his treatment." Plaintiff and PA Corbin came to the agreement after discussion, it would be best if Plaintiff followed up with medical at the half-way house. Obviously, the BOP was aware of the continuing injury, due to FCI Morgantown severe elevation changes, and finally, the approval process was deathly slow.

18

E. Defendants - The United States of America
                Federal Bureau of Prisons
                RRM Michelle Fulgum  (1983)
                Stacie Rimmer (1983)
                Mike Connell (1983)

On January 22, 2019 the Plaintiff arrived at the half-way house in Nashville, Tenessee.

**Please be advised from here forward, Plaintiff has numerious recorded calls, emails, photos of half-way house kiosk messages, and recorded conversations in person. As a insurance professional Plaintiff operated within the laws.**

When Plaintiff left FCI Morgantown he was given a (30) day supply of pain medication. Upon arrival at the half-way house Plaintiff met with counselor Kenneth Dunlap. Plaintiff provided all medical records to Dunlap. Advised the need of medical treatment, Plaintiff patient, allowed a few days/weeks to pass. The whole time being assigned to a top bunk. Because the Plaintiff was in BOP custody, he contacted RRM Michelle Fulgum, via telephone. Plaintiff advised RRM Fulgum of his medical needs and the conditions of confinement. Due to Plaintiff's ongoing injury (2) years, and the type of injury it is obviously a "serious medical need" which is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. See Villegas v. Metro. Govt. of Nashville, 709 F.3d 563, 570 (6th Cir. 2013). RRM Fulgum advised during the recorded conversation she would check with the half-way house and get back to Plaintiff. Later that day Plaintiff was called to H.W.H Director Bryant's office. His bunk assignment was changed, Plaintiff was advised the director would follow-up with his counselor, that RRM Fulgum stated "you must program and get a job before you get a furlough." Obviously RRM Fulgum was "beginning to ignore" the Plaintiff's medical needs. Plaintiff waited a few days, sent a kiosk message to director Bryant.

19

Director Bryant's response "I'm tired of you blaming me for everything." Plaintiff ended up going over (50) days with no pain medication. Due to the on going pain/worry Plaintiff began to experience internal issues, bleeding. This issue stems from severe childhood sexual abuse. Plaintiff was raped as a young child by a family memeber, hospitalized. Plaintiff had been experiencing this issue on and off since he was designated to FCI Morgantown. Plaintiff's BOP medical records indicate the issue. Plaintiff again contacted RRM Fulgum. This contact resulted in a face to face recorded conversation where Fulgum issued a "direct threat." RRM Fulgum did not want to hear about Plaintiff's medical issues any further, "if you keep on, I will file harrassment charges." Plaintiff was patient, didn't contact RRM Fulgum again. In March 2019 Plaintiff totaled his truck, received a citation for "no change of address." He'd followed RRM Fulgum's instruction. Plaintiff resides in Kentucky, but was being forced to live at the half-way house even though he was RDAP complete (Exhibit 10). per RDAP policy, and his home confinement date had passed. In April 2019 Plaintiff received a "alleged incident report" for alcohol use. See (Exhibit 8), along with attachments. See (Exhibit 9) appealing this alleged incident, appeal to the BOP regional director.

In early May 2019, (4) months after arrival at the half-way house Plaintiff still had no medical treatment pertaining to his Achilles & G.I. bleed. Plaintiff called Stacy Rimmer, RRM Fulgum's supervisor. There was no answer, Plaintiff left a voicemail. Plaintiff waited (2) days. Plaintiff called Mike Connell, RRM Fulgum's & Rimmer's supervisor.

After this conversation, retalitory treatment was harsh. It should be noted: Plaintiff was fined $276.60 for following RRM Fulgum's directions in relation to his vehicle accident. The State of Tennessee stated Plaintiff should have changed his drivers license address.

20

Finally in middle May, Plaintiff saw an orthopedic surgeon and a G.I. Physician. Due to Plaintiff's alleged April 2019 incident, Plaintiff was on half-way house restriction. Plaintiff's medical moves were denied at times (Plaintiff has photos of the kiosk denials) hindering his medical treatment. Plaintiff was not the only RDAP inmate to received an incident report for alcohol in April. The African-American inmate that received the same report, much more intoxicated, received much less punishment. This behavior by RRM Fulgum is illegal & unethical. This leads to factual documentation and factual allegations. Asserting an equal protection claim.under racial discrimination (1985 claim). The direct evidence of discrimination is outlined in McDonnel Douglas Corp. v. Green, 411 U.S. 792 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This will be addressed during depositions. Furthermore, Plaintiff and the witness have spoken. A copy of his report is on the way and said witness agrees to testify.

Plaintiff also asserts a claim under the Equal Protection Clause. The Plaintiff will provide the court with copies of other inmates disciplinary reports, DHO hearing reports, and call those witnesses at trial, as just mentioned. Plaintiff was treated different than the African-American inmates with the same incident report. See Creason v..City of Washington , 435 F.3d 820, 823 (8th Cir. 2006).

In the middle of May 2019 Plaintiff again contacted RRM Supervisor Mike Connell regarding the citation he had to pay, his medical care, and his home passes. Plaintiff recorded this call. The call got heated quickly. Plaintiff hurt, forced to work with a torn Achilles just so he could see his children had enough of the differential treatment. When Plaintiff, an inmate, questioned Mr. Connell, Connell stated **"You fucking thug inmate, I 'was' your only ally."** The call ends there. This statement clearly was "extreme and outrageous," citing intentional infliction of pain & emotional distress. That conduct from a BOP official was unwarranted and will be further investigated during depositions.

21

May 31, 3019 things took a shocking turn. The Plaintiff was informed, RRM Supervisor Stacy Rimmer wanted to speak to him. There were 'numerous' BOP officials on the call, too many to count. In the room with Plaintiff was director Clinton Bryant & counselor A. Linder. Plaintiff took his recording device with him even though director Bryant took his phone. Plaintiff advises he is recording, & the process continues. The call centered around Plaintiff's medical, and his alleged incident report. Mrs. Rimmer was doing 90% of the talking. Mrs. Rimmer acknowledges she spoke with medical, reviewed Plaintiff's issues, and they were serious. Things got heated when Mrs. Rimmer asked "What have you done to help yourself?" Plaintiff states:

1) "Hired an attorney." Mrs. Rimmer was pissed at this point.

2) I used P.O.L.K.A (RDAP terminology)
   a. Protect - I'm asking for treatment to protect my life and health.
   b. Objective - I'm looking at this in whole. My achilles has been torn 2+ years.
   c. Leading - leading the way to feel normal without alcohol.
   d. Keeping - keeping out of conflict. I state "No, Mike Connell called me a fucking thug inmate and told me he was my only ally, I recorded it."

The conversation ended. He was kicked out of the room by Mrs. Rimmer, advised to leave. Director Bryant advised him to go to work, he did. It should be noted Mrs. Rimmer & Mrs. Fulgum were raising their voices.

The next (2) weeks he met with gastrology physician, Dr. Herring, due to his blood work, he scheduled a colonoscopy for June 20, 2019. He also requested additional bloodwork which those medical moves were denied. During the same time period Plaintiff met with orthopedic physician Dr. Downs. Dr. Downs scheduled Plaintiff for Achilles tendon surgery June 28, 2019. See Exhibits 11 & 12.

22

In early June 2019 the Plaintiff met with BOP employee, J. Hierstetter.- Community Treatment Specialist. This face to face meeting occured in Nashville, Tenessee at the Community Treatment Center. Plaintiff recorded this meeting. Hierstetter starts by stating: "In my (15) years with the BOP I've never heard of, witnessed, or been part of a meeting like the one with you." Hierstetter is referring to the May 31, 2019 call. Hierstetter goes on to state and discuss the number of BOP officials on that call, finally Hierstetter states "You are on the thinnest of ice, one wrong word and you're gone." Hierstetter and the Plaintiff spoke on another occassion where Hierstetter tells the Plaintiff "You are a pain in my ass," "It's how you relay the information." Hierstetter is referring to emailed communication. while Hierstetter is not named as a defendant that could change if an amendment is filed. Hierstetter will be deposed, and will be a witness at trial for the Plaintiff.

Again, Plaintiff uses a two-prong test to assess a deliberate indifference claim. Burgess, 735 F.3d at 476 (citing Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). First, a court must "determine whether the plaintiff had a 'sufficiently serious medical need' under the objective prong. Id. Citing Harrison v. Ash, 539 F.3d 510, 518 (6th Cir. 2008))). "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." Id. (citing Blackmore v. Kalamazoo Cty. 390 F.3d 890, 897 (6th Cir. 2004)). Second, the court determines "whether the defendant had a 'sufficiently culpable state of mind' in denying **medical care** under the subjective (2019 U.S..Dist. LEXIS 9) prong." Id. (citing Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000)). The requisite culpability for a successful deliberate indifference claim demands a showing of something above "mere negligence," yet below "specific intent to harm or knowledge that harm will result." Id. (citing Farmer, 511 U.S. at 835.) "Under

23

Farmer, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Blackmore, 390 F.3d at 896 (quoting Farmer, 511 U.S. at 837). The defendant's subjective "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs" is axiomatic to the deliberate indifference state of mind. Id. (quoting HOrn v. Madison cty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994)).

Obviously Defendants RRM Fulgum, S. Rimmer, M. Connell, and the BOP fail the "two -prong test" miserably. Due to the previous conversation with Mr. Mike Connell stating "You fucking thug inmate, I 'was' your only ally," the May 31st conversation with BOP officials, and June 15th issue with Director Bryant, the Plaintiff was informed he was being sent back to prison. The "day before" the Plaintiff's colonoscopy, Jūne 19, 2019 Plaintiff was arrested by the U.S. Marshals. Plaintiff was taken to a local jail. Both general surgical procedures were ignored by the BOP, RRM Fulgum, Supervisor S. Rimmer, and Supervisor Mike Connell. Due to the past recorded telephone conversations, the Defendants knowledge of the Plaintiff's medical needs, the Defendants actions to jail Plaintiff (1) day before general surgery was an "intentional infliction of emotional distress." It was done with intent to harm. The Plaintiff filing this civil action some (9) months after the scheduled surgical procedures & previously exhausted remedies. The Plaintiff a sexual assualt survivor bleeds daily internally. This is reflected in Plaintiff's BOP medical records. Clearly the Defedant's conduct was: (1) extreme and outrageous; (2) intentional or reckless; and (3) caused emotional distress (4) that was severe. Hubbard v. United Press Int'l, Inc. 330 N.W.2d 428, 438-39 (Minn. 1983). Actionable conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (citation omitted). Moreover, the distress caused must be "so severe that no reasonable

man could be expected to endure it." Id. (citation omitted).
Plaintiff is still bleeding... See Exhibit 25 - 2 pgs.

F. Defendants - FCI Ashland
            Federal Bureau of Prisons (BOP)
            HSA Baier
            Dr. Rios
            FCI Morgantown
            Michelle Fulgum, Stacey Rimmer, Mike Connell

As stated, the Plaintiff was kept in transit or in the SHU
from June 19, 2019 to December 5, 2019. on September 4, 2019
the Plaintiff was returned to FCI Morgantown. The Plaintiff
was placed directly in the SHU (Special Housing Unit), where
he was held until September 29, 2019. See (Exhibits 23 & 24).
During  intake September 4, 2019 Captain R. Fullen entered
the room, (located in Receiving & Discharge) while the Plaintiff
was speaking to Counselor Edwards. Captain Fullen screamed;
"That letter you dropped when you left, your going to the
SHU!" Captain Fullen was aggressive, pointing his finger,
he slammed the door and left. It shoudld be noted Captain Fullen
was referring to a letter I wrote exposing an inappropriate
relationship between the Defendant, C. Zemmerick and (2) seperate
inmates, that relationship, being emotional & showing favoritism.
Thus, a violation of BOP policy - Standards of Employees. Again
referring to Exhibits 23 & 24. The court will find Captain
Fullen's threats were acted upon. The Plaintiff had money
on his commissary account, however, he was denied the Constitutional
right to purchase "OTC" (over the counter) medication and
stamps. Two seperate BOP officers will testify Captain Fullen
ordered the mentioned. In addition to Fullen's order, the
Plaintiff was not allowed access to the phone. While a prisoner
does not have a Constitutional right to commissary or telephone
privelages; see Polston v. Shartle. No. 09 CV 2896, 2010 U.S.
Dist. LEXIS 50295, 2010 WL 2044867, at #3 (N.D. Ohio May 21,
2010) denying "OTC" medications & stamps clearly violates
the Plaintiff's Constitutional rights.

25

The Plaintiff bleeding out of his rectum, and suffering from the Achilles injury was shocked! Captain Fullens actions show a clear pattern of retaliation in addition to Fulgum, Rimmer, & Connell. The Plaintiff has provided the court "direct evidence" of retaliation.

The Plaintiff understands he must show that: (1) He engaged in a protected conduct; (2) An adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) There is a casual connection between elements one and two - that is, the adverse action was motivated at least in part by his protected conduct. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) under the causation element of a prisoner's prima facie case for retaliation (2019 U.S. Dist. LEXIS 10) the subjective motivation of the decision maker is at issue - that is, the Plaintiff must show that the decision was motivated, at least in part, by the Plaintiff's protected activity. See Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001). "Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate" in proving a retaliation claim. Thaddeus-X, 175 F.3d at 399. Meaning RRM Fulgum, RRM Connell, RRM Rimmer, and Captain Fullen retaliated against the Plaintiff. Each certainly had the motivation  and/or intent in committing the alleged adverse action against the Plaintiff. All communication documents, including, but not limited to e-mails related to the Plaintiff are likewise relevant. See Tate, 2001 U.S. Dist. LEXIS 26697, 2001 WL 1681112, at #5 (finding that "the actual imposition of discipline, as opposed to mere complaints, may be relevant to either Plaintiff's claims or the listed defendants credibility"). The above mentioned defendants have each played a role in the delay/denial of the Plaintiff's medical care, simply because the Plaintiff filed formal complaints with the Department of Justice -  Office of Inspector General, and exercised his administrative right - asking for medical care.

26

At this point the Plaintiff was kept in the SHU until September 29, 2019. On September 29, 2019 the Plaintiff was flown to "OKC" - BOP Transit Center. On October 5, 2019 the Plaintiff was flown to U.S.P./FCI Atlanta. From October 5, 2019 to November 12, 2019 the Plaintiff was subjected to the most horrific conditions in/at U.S.P./FCI Atlanta. The conditions are well established within the BOP. The Plaintiff was subjected to: wearing the same overwear & underwear for (5) weeks. One-time (14) days straight, locked down, the Plaintiff was not allowed to bathe, thus with "G.I." issues was horrific.

On November 12, 2019 the Plaintiff was bused to "FPC" (Federal Prison Camp) Ashland, Kentucky. Just a few minutes after intake the Plaintiff was handcuffed, taken to FCI Ashland "low." The Plaintiff met with Captain Norris. The Plaintiff was informed by Norris he was under "Captain's review," and placed in the SHU. (This will be discussed during depositions, as it directly relates to FCI Morgantown Captain Fullen). Captain Norris asked/advised; "What happened in Morgantown, it looks funny how you got here?" "I'll speak to Captain Fullen have you out in a ʌcouple days." For (22) days Plaintiff was kept in the SHU. Plaintiff completed sick call forms, requesting Achilles tendon braces as he was forced to a top bunk, with a torn Achilles. Plaintiff also requested additional toilet paper due to his G.I. bleeding. Both were denied. FCI Ashland Dr. Rios & RN Lewis completed Plaintiff's (14) day in-take medical examine while in the SHU; evidenced by the Plaintiff's medical records his Achilles & G.I. were discussed. Dr. Rios committed a plain error within his consultation request directly after the (14) day in-take. Dr. Rios list Plaintiff's injury as Achilles "rupture" not a "tear", (Exhibit 13) even though Plaintiff had provided his medical records to FCI Ashland Medical.

RRM Fulgum, S. Rimmer & M. Connell, were aware, of the Plaintiff's medical situation, as was the BOP. All the while continuing to expose Plaintiff to cruel and unusual punishment, additional tearing of Plaintiff's Achilles. Plaintiff can easily show

27

within his administrative remedies & medical records HSA
Baier & Dr. Rios meet both components of deliberate indifference
as well. Horn v. Madison County Fiscal Court, 22 F.3d 653,
660 (6th Cir. 1994) Citing Estelle v. Gamble, 429 U.S. 97,
104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). See(Exhibits
14 & 15)..Administrative remedy filing at FCI Ashland, See
(Exhibits 16 thru 22) thus showing HSA Baier purposely committed
1) a HIPPA violation; 2) withheld a FOIA document with intent
to delay & harm. Please note, HSA Baier has become vindictive.
Proved through his own actions placed in writing.

Starting in December 2019 the Plaintiff has had to argue
his RDAP 3621(e) revocation from day 1. The revocation occured
2 1/2 months after the "alleged incident" in the Plaintiff's
BOP file. See Exhibit 26 - 2 pages. For FCI Ashland & (6)
BOP employees, See Exhibit 26. The Unit Staff response for
this informal resolution is without merit, without factual
information  and without factual documentation to show what
they placed in writing. What Unit Staff placed in writing
is simply a 'complete disregard for BOP Policy & Procedure.'
Unit Staff is relaying a clear message; it's okay for BOP
Policy & Procedure to be ignored, broken, not followed by
all BOP staff.

Thus (6) BOP employees, (Fulgum, Rimmer, Connell, U.M. Lester,
C. Todd, CM Patton), provide a host of Federal Rights violations.
1) Citing; There is a clear and persistent pattern of 'illegal
activity.' Element (1) requires the existence of an illegal
official policy or legislative enactment. The Unit Team record
supports the above mentioned illegal activity per law. As
mention & cited; The Informal Resolution Unit Team returned,
negates BOP Policies, Procedure, Standards, and ethical requirements
of employees. Plaintiff was RDAP COMPLETE, per BOP Policy,
as listed within his inmate file. In addition, Case Manager,
Mr. Patton denied access to his 'JNC' (Judgment in Commitment
Order) for several days, a FOIA document. Unit Team denies
access to Plaintiff's 409 Forms as well. Last week Mr. Patton

28

'screamed' "You are not accepting responsibility for your actions, I will write you a letter you will not like!" This request was in regards to Plaintiff's Regional Appeal, 'alleged incident-112'. Mr. Patton a day later, called me to his office to apologize. I requested in writing Unit Manager, Mr. Lester take this issue to SIS Lt. Shelton. 2) That an official with final decision making authority ratified illegal actions; That is clear in Plaintiff's case  and BOP file. In Element 2, Unit Manager, Mr. Lester discusses his authority in another Electronic Request to Staff. Again, please review those messages. Plaintiff can not attach them to a BP-9 per policy. Plaintiff does print each message, copy it, and mail a copy home. Citing; February 26, 2020 during Plaintiff's Unit Team meeting Mr. Lester allowed counselor Todd to dictate, intimidate, and question why Plaintiff was requesting a BP-9 in relation to this RDAP Revocation. Mr. Todd never refused access, but came close, he a was very sarcastic, demeaning with his remarks, making fun of Plaintiff's testifying for the United States, & his agreement with The United States; citing he will be released without supervised release after he testifies between April 2020 and June 2020. Mr. Todd kept on stating: "Did you or did you not place in a email you were being released without supervised release?" Plaintiff answered, "Yes." Mr. Todd "You don't need a BP-9 then." Furthermore, refer to the mentioned 'Electronic Request to Staff' messages again. 'Many of these staff messages' just accompanied Plaintiff's Regional Appeal. A copy of the Regional Appeal was forwarded to Kentucky Senator Rand Paul, Mr. Jared Kushner, The BOP Director, The Attorney General, The United States Attorney, and my Counsel, amongst others, via Certified Mail. Plaintiff explained to the Unit Team he never had a DHO hearing. The DHO report was never signed nor delivered to him. Unit Team took 'weeks' to turn over the DHO Report, when Plaintiff was following Captain Norris's instructions. Plaintiff was floored to learn one existed. Unit Manager, Mr. Lester has clearly ratified improper actions of Unit Team in relation to the stated, perlay. 3) The existence of a policy of inadequate

29

training or supervision; in Element 3 Plaintiff is clearly able to show Unit Manager Mr. Lester is proving inadequate supervision. The 'Electronic Request to Staff' are cited as evidence that support Plaintiff's allegations. The actions to date clearly show Unit Team has been deliberately indifferent, thus, projecting Plaintiff to abuse of process, delays, and false imprisonment. Mr. Lester stated "I take this personal when you come at the guys that work for me." If Plaintiff asking Unit Team to research his file, direct him, asking Unit Team to follow BOP Policy & Procedure is him "coming at his guys" Mr. Lester is in the wrong business.  Plaintiff has never been anything byt professional. As mentioned, Plaintiff has an "Extraordinary & Compelling Situation with The United States, The ATF," his wife, his father, and his own medical care. Mr. Lester stated in writing "your numerically listed items are almost universal to all inmates serving a BOP sentence." This is beyond reckless, this upset many individuals during his legal call when Plaintiff read the Staff Response. 4) That the custom was the "moving force' OR direct casual link in a Constitutional deprivation." Thomas, 398 F.3d at 429 (quoting Doe, 103 F.3d at 508); See Milligan v. United States, 644 F. Supp. 2d 1020, 1040 n.13 (M.D. Tenn. 2009)(Citing Thomas, 398 F.3d at 429).

In regards to Element 4, the reader & courts will find there are genuine issues of material fact with respect to each of the four elements above. The illegal activity mentioned violates BOP Policy, ethics, procedures, & morals. It also violates the inmates 8th Amendment as mentioned in other Administrative Filings. BOP Employees have broken & ignored BOP policy & procedure, contributing to the above issues since March 2019. Plaintiff totaled his vehicle, the disagreement between RRM Michelle Fulgum started. Plaintiff following RRM Fulgum's instructions Plaintiff ended up with a citation of $297.00. Plaintiff has the Kiosk messages, recorded conversations (phone/in-person), & emails which he provided to The United States & his counsel. The "DIRECT CASUAL LINK" between Fulgum,

30

Rimmer, Connell, the BOP, and now FCI Ashland Unit Team is disturbing. Unit Team refuses to address factual information & documentation, no reasonable person or jury cound 'not' side with the inmate. Unit Team placed allegations in writing, clearly showing intent to keep the Plaintiff in prison as long as possible, verbalizing the same, citing; Counselor Todd in front of Mr. Lester & Mr. Patton "Why do you need a BP-9, your getting out without supervised release, that is what you put in your emails, all your doing is creating busy work." The fact of the matter is, it doesn't matter what Plaintiff emailed his mother or his attorney. Unit Team is completely negating the facts listed above, making their own policy, employing their own beliefs in regards to Plaintiff as they do most all inmates they manage. Finally, Plaintiff is aware of some e-mails & phone calls between BOP employees regarding Plaintiff and a RRM. Said communication was in regards to Plaintiff being placed at a half-way house in Marion, Illinois prior to the ATF trial. Placement would have provided the adequate medical care & placed Plaintiff where United States Attorney, Nute Bonner - Louisville, Kentucky requested Plaintiff be placed by April 2020, for the trial in Nashville, Tennessee. United States Attorney Mr. Bonner spoke to RRM in St. Louis, Mrs. Lyons requesting Plaintiff be moved as soon as possible. Mrs. Lyons denied Plaintiff's move to the half-way house prior to April 2020 "after reaching out to other BOP employees." Why? What was said? Thus, "illegal activity" as defined per the case law standard, used in each of the Federal Courts.

## Conclusion

The detrimental effect, citing the last (3) years, the Plaintiff has collected a 'mountain of evidence,' and utlizied the BOP Administrative Remedy Process. Thus, giving the Defendants every opportunity to properly address the Plaintiff's medical situation. The Plaintiff is bleeding and suffering daily for his Achilles tendon injury.

31

There now becomes the issue of "tantamount to intent to punish." See Horn v. Madison Cty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994). Referring to Exhibit 26 - 2 pages again, the court will find the Plaintiff's RDAP 3621(e) was revoked (1) day prior to his scheduled colonoscopy, and (8) days prior to his Achilles tendon repair. Again referring to Exhibit 26 - 2 pages the court will find the revoke was 2 1/2 months after the alleged incident, thus, intent to physically harm & punish. It should be noted, AUSA - Nute Bonner reached out to RRM Michelle Fulgum, requesting the Plaintiff be moved to a half-way house/home confinement. RRM Fulgum denied that request  even though the Plaintiff is eligible per his BOP file. See Exhibit 21 - 2 pages.

The Plaintiff has premised himself on: To establish an Eighth Amendment violation on inadequate medical or mental health care, a prisoner must demonstrate that the defendant acted, or failed (2019 U.S. Dist LEXIS 21) to act, with "deliberate indifference to serious medical needs." Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834, 843 (6th Cir. 2002). A claim of deliberate indiffernece under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. Turner v. City of Taylor, 412 F.3d 629 (6th Cir. 2005). To satisfy the subjective component, the defendent must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Horn v. Madison Cty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indiffernece if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Taylor v. Boot, 58 F. App'x 125, 126 (6th Cir. 2003) (citing Farmer, 511 U.S. at 837-47). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious

32

course of treatment." Terrance, 286 F.3d at 843 (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such **grossly inadequate** care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. at 844 (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, (2019 U.S. Dist. LEXIS 22) or even gross negligence, will not suffice." Wright v. Taylor, 79 F. App'x 829, 831 (6th Cir. 2003) (citng(Farmer, 511 U.S. at 835-36; Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). See Exhibit 28... Showing FCI Ashland & Captain Norris acted upon FCI Morgantown Captain Fullen's wishes. This type of behaviourdisplayed by the Defendants is pursuamt to criminal charges be brought against many listed Defendants. Defendants have denied/delayed medical treatment for "non-medical reasons, their conduct creates [a] Constitutional infirmity." See Darrah 865 F.3d at 372.

With that the Plaintiff has clearly provided the court with sufficient documentation to proceed with a scheduling order. The Plaintiff is set to be released from the BOP in June of 2020, without supervised release, per "AUSA - Nute Bonner, Louisville, Kentucky."

Plaintiff requests a trial by jury.

Last, this is a very complex, sensitive filing. There are many witnesses to be deposed. Obviously, some of the listed defendants are under investigation, therefore, the Plaintiff respectfully requests the  U.S. Marshal's serve each listed person(s) and entities directly after the court screens the complaint. In addition, the Plaintiff will request the court redact the complaint/filing to preserve the integrity of the investigations, and allow the Plaintiff due process. Plaintiff respectfullf requests the court to confim investigations, as well as, issue an order freezing all assets, bank account, credit of the "individual Defendants," and order the Defendants to place their "personal insurance carriers on notice.

33

Plaintiff respectfully requests (120) days to amend complaint due to documentation at home and ongoing issues.

## Prayer for Relief

Comes the Plaintiff, Corey A. Thorson, (44) year old male. Mr. Thorson, a white-collar inmate, educated, now suffers from a disability he can not recover from. Plaintiff can no longer climb, use ladders, be on uneven surfaces as a insurance adjuster or safety engineer is required to do . In addition Plaintiff leads an extremely active lifestyle, competing in extreme sports - racing mountain bikes and dirt bikes - working with a certified trainer. Plaintiff also golf's at less than a (2) handicap, playing left handed and his right ankle, leg, calf, and Achilles being affected Plaintiff's leg (from the knee down) is roughly 1/2 the size of the other. Thus, affecting his "ADLs" (Activities of Daily Living) and virtually ending his ability to work and the activities he loves.

Plaintiff Corey A. Thorson, seeks $18,000,000.00 in compensatory damages & $28,000,000.00 in punitive damages.

Respectfully Submitted,

Corey A. Thorson

34

AO 245B (Rev. 02/16) Judgment in a Criminal Case Sheet 2 - Imprisonment

DEFENDANT: Thorson , Corey A.
CASE NUMBER: 5:16-CR-17-1-TBR

Judgment-Page _3_ of _8_

$E_{XHIBIT}$ (1)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of **27 months as to Count 1 in the Indictment, and 24 months on Counts 2 – 6, which shall run concurrently to each other but shall be served consecutively to the term imposed on Count 1, for a total term of 51months imprisonment**.

☒    The Court makes the following recommendations to the Bureau of Prisons:

The Defendant be placed in a MEDICAL FACILITY, such as, FMC Lexington  AS SOON AS POSSIBLE, FOR TREATMENT OF HIS IMMEDIATE LEG INJURY. Defendant shall provide medical records to facility.

The Defendant be placed in a facility wherein he may participate in a Residential Drug Abuse Treatment Program (RDAP) for treatment of narcotic addiction and/or drug/alcohol abuse and be placed in a facility that is near his family.

☒    The defendant is remanded to the custody of the United States Marshal.

☐ ·  The defendant shall surrender to the United States Marshal for this district:

 ☐  at    A.M. / P.M. on

 ☐  as notified by the United States Marshal.

The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

 ☐  Before 2:00 p.m. on

 ☐  as notified by the United States Marshal.

 ☐  as notified by the Probation or Pretrial Services Office.

 ☐  The defendant shall continue under the terms and conditions of his/her present bond pending surrender to the institution.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

  Defendant delivered on _____ To _____

at _____ , with a certified copy of this judgment.

               UNITED STATES MARSHAL

               By _____

EXHIBIT 2
3·Pages

## U.S. DEPARTMENT OF JUSTICE
### FEDERAL BUREAU OF PRISONS
### F.C.I. Ashland, Ashland, Kentucky, 41105
### 2018-00195

## A F F I D A V I T

I, Corey Thorson, Reg. No. 18601-033, an inmate incarcerated at the Federal Correctional Institution in Ashland, Kentucky, make this statement freely without any promises or assurances:

1. *CT* I understand that this is an official investigation and that I am required to cooperate fully and truthfully by providing all pertinent information which I may have.

2. *CT* I understand that the subject matter of this interview and any information exchanged with the investigator is confidential and may not be discussed with others.

3. *CT* I do not have a recording device on my person or in my effects. I also understand that this interview is not being recorded by the investigator.

4. *CT* I am not under the influence of any prescribed or non-prescribed medication, illicit drug, or alcohol that would affect my ability to answer questions completely and truthfully during this interview.

5. *CT* On August 11, 2017, while incarcerated at FCC Forrest City, AR, I was called to R&D for a medical transport.

6. *CT* Correctional Officer's Joseph Peeler and James Pruett were taking me to see an orthopedic specialist.

7. *CT* While we were at the doctor's office he was explaining his pain, the transfer and boot process and Pruett began to verbally attack and belittle me.

*Sensitive But Unclassified*

Date: 12-13-19                                    Page 1 of 2

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS
F.C.I. Ashland, Ashland, KY  41105
**2018-00195**

---

Affidavit (continued): Corey Thorson, Reg. No. 18601-033

8. *CT* Pruett said, "The next person who says the word boot, I'm shooting."

9. *CT* When we got back to the institution Pruett started talking to one of the perimeter patrol officer and referred to me as a "Pussy with a boot."

10. *CT* Also, while we were driving back to the institution Pruett drove and stayed on his cellular telephone watching improper videos and cussing.

11. *CT* Pruett's driving was very erratic while on his cellular telephone.
///////////////////////// END OF STATEMENT/////////////////////////////////

**Sensitive But Unclassified**

Date: 12-13-19

Page 2 of 2

# Oath

I declare under the penalty of perjury that the foregoing statement consisting of 2 pages is true and accurate to the best of my knowledge and belief.

Corey Thorson, Reg. No. 18601-033

Subscribed and sworn to before me this 13th day of December, 2019.

*Authorized by 5 USC 303*
*to Administer Oaths*

*Lieutenant C. T. Shelton, Special Investigative Supervisor*
*Federal Bureau of Prisons*
*Federal Correctional Institution, Ashland, Kentucky*
*2018-00195*

Case 4:18-cv-00032-JM    Document 1-2    Filed 04/15/18    Page 6 of 15 PageID #: 15

EXHIBIT 3

1- Pg.

Forrest City Medical Center
1601 Newcastle Road
Forrest City AR  72335
870 261 0225

-18601-033          IMAGING REPORT

---

NAME: THORSON, COREY A

MRN:           346756      ROOM #: .                                    DOB: 08/03/1975
ACCOUNT #:     1390999     BED #:                                       AGE: 42 Y
PATIENT TYPE: RAO          ORDER Date/Time:08/18/2017 14:11:59 SEX: M

ORDER #:       ACCESSION #:     EXAM DESCRIPTION:
100            13909990000100   MR-LW JOINT WO CONTR-RIGHT
Dictated By:            Sharp, Mark
Ordering Physician:     CAPPS, JOSEPH R
Attending Physician:    CAPPS, JOSEPH
Primary Care Physician: ,

---

PROCEDURE:    MR-LW JOINT WO CONTR-RIGHT

CLINICAL INDICATION:   right Achilles tendon injury

COMPARISON:    None

TECHNIQUE: Sagittal T1, sagittal T2 fat sat, axial T1, axial T2,
coronal T1, coronal fat sat proton density and sagittal T2 fat sat as well
as 3-D sagittal fast spin gradient images of the right ankle were
obtained without IV contrast.

FINDINGS:
No acute fracture or dislocation is seen. There is greater than 90%
tear of the Achilles tendon with only a tiny sliver of the tendon still
intact approximately 5 cm proximal to its insertion on the calcaneus.
There is abnormal thickening of the tendon extending all the way up into
the mid calf with intrasubstance signal seen within the proximal
Achilles. Edema is present within the calf . The peroneus longus and brevis
tendons are normal. The extensor and flexor tendons of the ankle are
normal. The anterior and posterior talofibular ligaments are intact. The
deltoid ligament is unremarkable. 7 mm rounded area of abnormal signal
is seen within the calcaneus likely a bone cyst. Small tibial talar
joint effusion is seen.

IMPRESSION:
1.  Greater than 90% tear of the Achilles tendon is seen approximately
5 cm proximal to its insertion on the calcaneus. Orthopedic
consultation is recommended.

Electronically signed by Mark Sharp MD on 08/18/2017 15:55:36.

Page 1 of 1

StatRad Exam Requisition



*EXHIBIT (4)*

*1 PAGE*

## FMC Fort Worth FTW

| | | | |
|---|---|---|---|
| Patient: | THORSON, COREY (Male) | DOB: | 08/03/75 |
| Register#: | 18601-033 | Age: | 42 |
| Date: | 01/25/18 08:29 | Status: | OP |
| Slicecount: | 2 | | |
| History: | Podiatry clinic | | |
| Priors: | | | |
| Exams: | FILM RIGHT CALCANEUS | | |
| Referring Phy: | Ellert, Charles DO | | |
| Ordering Phy: | | | |
| Ordering Phy #: | | | |
| Accession Numbers: 202#BOP210845827 | | | |

**Final Report**

**Exam: FILM RIGHT CALCANEUS**

**INDICATION: Podiatry clinic**

**COMPARISON: none**

**FINDINGS:**

2 views of the right heel are obtained.

No fracture or malalignment.

There is thickening of the Achilles tendon shadow along nearly its entire course. There is edema anterior to the Achilles tendon within the pre-Achilles tendon fat pad.

Joint spaces maintained.

No calcaneal spurs.

No arthritic changes identified.

Remaining soft tissues are unremarkable by radiograph exam.

**IMPRESSION:**

No fracture or malalignment.

Thickening of the Achilles tendon shadow and pre-Achilles tendon fat pad soft tissue edema. Findings are concerning for tear injury of the Achilles tendon. More detailed evaluation by MRI could be considered to further evaluate.

Remainder of exam is unremarkable.

*Exhibit (5)*

*2 PAGES*

**PATIENT NAME:** Thorson, Corey
**BIRTH DATE:** 8/3/1975
**MPI#:** ENV2532781
**DATE OF EXAM:** 4/6/2018

**REFERRED BY:** Charles Eilert, DO
3150 Horton Rd
Fort Worth, TX 76119

*◯ ENVISION* **IMAGING**

*Reg # 18601-033 FMC Fort Worth*

**EXAM:** Right ankle MRI

**HISTORY:** History of bone spur and Achilles tendon surgery in September 2017..

**TECHNIQUE:** Noncontrast MRI of the right ankle with axial T2 and PD fat sat, coronal T1 and PD fat sat, and sagittal T1 and stir sequences.

**COMPARISON:** None

**FINDINGS:** There is evidence of previous Achilles tendon repair with multiple screws in the posterior superior calcaneus. This appears to include a tendon graft. There is marked thickening of the tendon. A small amount of fluid is present within the medial distal portion of the tendon which could represent a low-grade partial tear, but these findings are still considered within the spectrum of normal findings given the timing of the surgery. There is no high-grade tear.

Minimal edema within the posterior superior calcaneus is likely reactive. There is no fracture. No tibiotalar or posterior subtalar arthropathy is evident. No significant arthropathy is identified in the visualized portion of the midfoot.

Mild peroneus longus tendinosis is present with no tendon tear. Peroneus brevis tendon is unremarkable. The medial flexor tendons and anterior extensor tendons appear normal.

The anterior and posterior syndesmotic ligaments are intact. The anterior talofibular, calcaneofibular, and posterior talofibular ligaments are intact. Deep and superficial deltoid components appear normal. Spring ligament complex is intact. Tarsal sinus and its contents including the cervical and interosseous talocalcaneal ligaments appear normal.

The visualized portion of the plantar fascia is normal. The included musculature is normal. No mass or fluid collection is present.

**IMPRESSION:** Evidence of prior Achilles tendon repair. A small amount of fluid is present within the

**PATIENT NAME:** Thorson, Corey
**BIRTH DATE:** 8/3/1975
**MPI#:** ENV2532781
**DATE OF EXAM:** 4/6/2018



medial distal portion of the tendon/graft and may represent a small, low-grade partial tear but is also considered within the spectrum of normal findings given the timing of the surgery. No high-grade tear is present.

Mild peroneus longus tendinosis.

Report Ends

Robert Bressler, MD
This document was electronically signed by Robert Bressler, MD on 4/6/2018

*Exhibit (6)*
*3 pages*

## Bureau of Prisons
## Health Services
## Clinical Encounter

| | | |
|---|---|---|
| Inmate Name: THORSON, COREY A | | Reg #: 18601-033 |
| Date of Birth: 08/03/1975 | Sex: M   Race: WHITE | Facility: FOR |
| Encounter Date: 08/04/2017 10:43 | Provider: Dunn, Lorri RN | Unit: M06 |

Nursing - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**      Provider: Dunn, Lorri RN

Chief Complaint: Pain

Subjective:    My Achilles tendon in my right ankle was torn before I was transferred here. I am having pain and swelling in my right ankle. I had a walking boot that broke and I was given another one last month but it was very dirty and I refuse to use it. I'm worried about getting infection.

Pain:        Yes

**Pain Assessment**

| | |
|---|---|
| Date: | 08/04/2017 10:51 |
| Location: | Ankle-Right |
| Quality of Pain: | Sharp |
| Pain Scale: | 7 |
| Intervention: | wrqpped with ankle wrap |
| Trauma Date/Year: | 2017 |
| Injury: | right Achilles tendon |
| Mechanism: | sports related |
| Onset: | 2-6 Months |
| Duration: | 2-6 Months |
| Exacerbating Factors: | walking |
| Relieving Factors: | decreased movement |
| Comments: | |

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 08/04/2017 | 10:54 FOX | 97.7 | 36.5 | | Dunn, Lorri RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 08/04/2017 | 10:54 FOX | 53 | | | Dunn, Lorri RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 08/04/2017 | 10:54 FOX | 18 | Dunn, Lorri RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 08/04/2017 | 10:55 FOX | 169/110 | Right Arm | Sitting | Adult-large | Dunn, Lorri RN |
| 08/04/2017 | 10:54 FOX | 180/115 | Right Arm | Sitting | Adult-large | Dunn, Lorri RN |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 08/04/2017 | 10:54 FOX | 98 | | Dunn, Lorri RN |

**ASSESSMENT:**

| | | |
|---|---|---|
| Inmate Name:   THORSON, COREY A | | Reg #:    18601-033 |
| Date of Birth:   08/03/1975 | Sex:      M    Race:  WHITE | Facility:  FOR |
| Encounter Date: 08/04/2017 10:43 | Provider:  Dunn, Lorri RN | Unit:     M06 |

Alteration in comfort

Inmate reports continued pain in his right ankle. He is not wearing the boot because he said it was very dirty when given to him. BP is elevated today, notified provider of BP and received orders for amlodipine 10mg now and recheck BP at noon today. Ankle is swollen in the Achilles area. No redness and no open wound. No signs of infection. Will offer to send the removable inside part of the boot to laundry. Informed inmate that he has an orthopedic consult pending.

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 08/04/2017 | Counseling | Access to Care | Dunn, Lorri | Verbalizes Understanding |

**Copay Required:** No              **Cosign Required:** No
**Telephone/Verbal Order:**  No

Completed by Dunn, Lorri RN on 08/04/2017 11:06
Requested to be reviewed by Wingo, Michelle PA-C.
Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Cosign/Review

| Inmate Name: | THORSON, COREY A | | | Reg #: | 18601-033 |
|---|---|---|---|---|---|
| Date of Birth: | 08/03/1975 | Sex: | M | Race: | WHITE |
| Encounter Date: | 08/04/2017 10:43 | Provider: | Dunn, Lorri RN | Facility: | FOR |

**Reviewed with New Encounter Note by Wingo, Michelle PA-C on 08/04/2017 13:04.**

*EXHIBIT - 1*

*1 page*

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | THORSON, COREY A | | | | Reg #: | 18601-033 |
| Date of Birth: | 08/03/1975 | Sex: | M  Race: WHITE | | Facility: | FOR |
| Note Date: | 08/11/2017 11:15 | Provider: | Wingo, Michelle PA-C | | Unit: | M06 |

Review Note - Report Review encounter performed at Health Services.

**Administrative Notes:**

**ADMINISTRATIVE NOTE  1**         **Provider:** Wingo, Michelle PA-C

Inmate seen per outside ortho surgery regarding right Achilles tendon injury. surgery recommended along with consideration of repeat MRI. boot walker given for use as needed. inmate states currently in pain. medication includes Sulindac and Tylenol. states has taken Sulindac since prior to incarceration. will change from Sulindac to indomethacin. continue Tylenol as needed. instructed to allow ~2 hrs between Indometacin and Tylenol dosing. verbalizes understanding. Achilles tendon exercise handout given per ortho, copied and given to inmate on return to institution.

discussed case with MD. MD to begin medial transfer request process due to surgical procedure and follow up/therapy required after procedure completed. will hold repeat MRI at this time until decision of transfer made.

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Indomethacin Capsule | 08/11/2017 11:15 | 50mg Orally - three times a day PRN x 180 day(s) -- take with food. do not take with Naproxen, IBU or Sulindac |

**Indication:** Injury of Achilles tendon

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| 366774-FOX | Sulindac 150 MG Tab | 08/11/2017 11:15 | Take one tablet (150 MG) by mouth twice daily "Chronic Care Verified" |

**Discontinue Type:**   *When Pharmacy Processes*
**Discontinue Reason:** *new order written*
**Indication:**

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:**  No

Completed by Wingo, Michelle PA-C on 08/11/2017 11:20
Requested to be cosigned by Woodard, Shella S MD.
Cosign documentation will be displayed on the following page.

*Exhibit 8 - 4 pgs.*

BP-A0205
MAR 10

**INCIDENT REPORT (CCC'S)**

**U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS**

## Part I · Incident

| 1 Name of CCC | | | | |
|---|---|---|---|---|
| Diersen Charities Nashville | | | | |
| 2 Name of Offender | 3 Register Number | 4 Date of Incident | | 5 Time |
| Thorson, Corey | 18601-033 | 04/13/2019 | | 9·13 pm |
| 6 Place of Incident | 7 Component | 8 Type of Offender | | |
| 408 Lea Ave | BOP | Pre-release | | |
| 9 Incident | | | 10 Code | |
| Postive/Alcohol | | | 112 | |

11 Description of Incident   (Date 04/13/2019 ___ Time 9·13 pm ___ staff became aware of incident)

On 04/13/2019, Inmate Corey Thorson (18601-033) signed in from a home pass at 9:10 PM. While conducting the routine alco check it registered a red color at 9:20pm. The intoxilyzer registered .127  A second reading was conducted 15 minutes later at 9:35pm, and it registered .126. A Third and final reading was conducted 15 minutes later at 9 50 PM and it registered  115  The inmates positive test for the consumption/use of alcohol is a violation of the Bureau of Prisons prohibited acts.

| 12 Signature of Reporting Employee | Date and Time | 13 Name and Title (Printed) |
|---|---|---|
| *Jared Rhodes* | 04/13/2019   9 13 pm | J Rhodes/Rhodes |
| 14 Incident Report Delivered to Above Offender by | 15 Date Incident Report Delivered | 16 Time Incident Report Delivered |
| *Carol Piphus, RM* | 4/13/2019 | 10:45 PM |

(Continued below)

Record Copy · Central File Record  Copy · DHO  Copy · Inmate After UDC Action,  Copy · Inmate Within 24 Hours of Part I Preparation

POF                              Prescribed by PS 7310                    Replaces BP-S205 073 or MAR  94

CENTER DISCIPLINE COMMITTEE REPORT (RRC)

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| NAME OF INMATE | Corey Thorson | REGISTER NUMBER | 18601-033 |
|---|---|---|---|

| INCIDENT DATE | 04/13/2019 | INCIDENT REPORT DATE | 04/13/2019 | HEARING DATE | 04/17/2019 |
|---|---|---|---|---|---|

| CODE | 112 | SUMMARY OF CHARGE | | Consumption of Alcohol |
|---|---|---|---|---|

**I. NOTICE OF CHARGE(S)**

Incident Report Delivered On : 04/13/2019 · DHO Signature

A  Advance written notice of the charge(s) (copy of the incident report) was given to the inmate on

Date : 04/13/2019    Time : 10 45 PM | By (staff member's name)    Resident Monitor Carol Piphus

B  The CDC Hearing was held on (date)    04/17/2019    Time    1 10 PM

C  The inmate was advised of his rights before the CDC and was provided a copy of his rights by

Staff Member's Name    Director Clinton Bryant    Date  04/15/2019

**II. STAFF REPRESENTATIVE**

A  Staff Representative Requested    Yes    | No |    X    | Waived at CDC Hearing |

Staff Representative Name  | N/A

Staff Representative Statement

C  Requested staff representative declined or could not appear  The inmate was advised of the option to postpone the hearing to obtain another staff representative with the result that

**III. PRESENTATION OF EVIDENCE**

A  Inmate has been advised of his right to present a statement, or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear on his behalf at the CDC hearing

The inmate    Admits  X    | Denies    | Silent |    the charge(s)

Summary of Inmate's Statement

Inmate Thorson acknowledged and confirmed that he had been drinking on the evening in question  He stated that he was upset by some news that he became aware of, regarding his wife, and an inappropriate relationship that she was continuing to have with a former student of hers  Inmate Thorson further stated that alcohol has been an ongoing problem for him in the past, however, it was just not ever something that he was able or willing to admit to  Inmate Thorson was very remorseful for his actions and made no excuses or placed any blame other than with himself  He also stated that the vodka he drank had been in his house since he first started taking home passes and he just chose to pick up and drink  Inmate Thorson said that he understood why his wife called and told the RRC that he had been drinking

C  Witnesses

1  The inmate requested witnesses    | Yes |    | No |    x

2  The following witnesses appeared at the CDC hearing

Name    | Register # or Title |

Statement

Name    | Register # or Title |

Statement

Name    | Register # or Title |

Statement

3  The following witness(es) requested were not called for the following reasons

Name    | Register # or Title |

Reason

Name    | Register # or Title |

Reason

Name ⌐      Register # or Title

Reason

4  The following witness(es) were unavailable and submitted written statements   Yes [ ]  No [ ]  N/A

Name      Register # or Title

Statement

Name      Register # or Title

Statement

Name      Register # or Title

Statement

D  Documentary Evidence

In addition to the incident report and investigation, the CDC considered the following documents  When Inmate Thorson arrived back to the institution, he was Alco-checked, as is standard for any resident returning to the RRC after a movement in the community  The initial reading of the intoxilyzer was 0 127  A second reading was conducted approx fifteen (15) minutes later, which indicated a blood alcohol concentration (BAC) of 0 126  A third and final reading was conducted fifteen (15) minutes after the second one, which registered 0 115

Any documents considered by the CDC are listed in section V of this report

F  Confidential information was considered by the CDC and was not provided to the inmate    Yes [ ]  No [ X ]

If yes, the confidential information was not released to the inmate due to safety of individuals and/or the security the institutions  The information was deemed reliable by the CDC because several individuals provided similar independent information and/or an individual provided specific information that corroborated existing evidence.

## IV. FINDING OF THE CDC

X   The act was committed as charged

    The following act was committed

    No prohibited act was committed  The incident report was expunged

## V  SPECIFIC EVIDENCE RELIED ON SUPPORT FINDINGS

The CDC reviewed the rights with the inmate during the CDC hearing  The inmate confirmed receipt of the rights form and an understanding of the rights  The inmate also confirmed that a staff representative and witnesses were not requested

The CDC reviewed the evidence and found the greater weight of the evidence shows you committed the prohibited act based on the following

"The incident report documents that Inmate Thorson was approved to go on a home pass was required to return early, based on information that he had possibly been drinking  When questioned about this over the phone, Inmate Thorson denied that he had been drinking, whatsoever  However, upon returning to the RRC from his home pass, it was determined that Inmate Thorson had been consuming alcohol, immediately prior to his return to the RRC  These actions are a violation of the BOP Federal Prohibited Acts & Diersen Charities.Rules & Regulations "

During the investigation, Inmate Thorson acknowledged his wrong doings of both consuming alcohol, as well as driving to the RRC in Nashville  TN, from his home in Hopkinsville, Kentucky, while under the influence of alcohol  Inmate Thorson has admitted that he has a problem with alcohol and is ready and willing to do the work that it takes to address his substance abuse issues

## VI  SANCTION RECOMMENDATION BY CDC

The CDC recommends

A loss of Good Conduct Time (RDAP aftercare)
Loss of privileges for 30 days

## VII. REASON FOR SANCTION(S) OR ACTION TAKEN

The sanctions were recommended to encourage the resident to make better choices, maintain clear conduct and to ensure that he understands the seriousness of his actions

## VIII. APPEAL RIGHTS

The inmate has been advised of the CDC findings, specific evidence relied on, action and reasons for the action  The inmate has been advised of his right to appeal this action within 20 calendar days through the Administrative Remedy Program

The inmate should file his appeal to the Administrative Remedy Coordinator, North Central Regional Office, Tower II, 8' Floor, 400 State Avenue, Kansas City, Kansas 66101

CDC Staff·   Andrianna Linder, Kenneth Dunlap   | Signature:                          | Date:   4/17/19

### IX. DISCIPLINE HEARING OFFICER

| | |
|---|---|
| Disallow Good Conduct Time | Days:   40 |
| Forfeit Non-Vested Good Conduct Time | Days: |
| Discipline Segregation | Days: |
| Loss of Privileges (Deemed Appropriate by RRC Staff) | Days:   30 |
| Quarters Restriction | Days |
| Other | Days |

Printed Name   J. George        Signature   George        Date   5-31-09

Delivered to Inmate by:        Date/Time

*t-hll 03-11-2020*  **EXHIBIT 1**

**U.S. Department of Justice**                    **Regional Administrative Remedy Appeal**  *2 pages*

**Federal Bureau of Prisons**     *THORSON, COREY # 18601-033  APPEAL I.R. # 362600*

Type or use ball–point pen.  If attachments are needed, submit four copies.  One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Thorson, Corey | 18601-033 | JA | FCI Ashland |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**    Under 18 U.S.C. §4042 the BOP is required to provide safekeeping, care, and subsistence.
Statement of Facts: I was "not" afforded a discipline hearing pertaining to the attached incident report. There is not a report number on the attached incident report. I was not provided Form BP-A0293 Jun 11. I was not aware a DHO report existed until I questioned Unit Team regarding my First Step Act time credits. It was then learned I lost (40) days good time. The DHO "J. George" signed this non compliant incident report May 31st, 2019 over (6) weeks after the alleged incident. This happens to be the same day of a "heated recorded conversation" with BOP employees and half-way house employees. The recorded call is in my possession. Pg.3 reflects -report never provided to me.

Grounds for Relief: Pursuant to BOP policy # 5270.09 my inmate rights were violated leading to violations of my Constitutional rights. Violations are, but not limited to: Chapter 5 (541.8), Citing 3(b), (c), (e)(1) & (3). Obviously, I was "present" at the half-way house when the alleged discipline hearing took place, however I never attended nor spoke to J. George. In addition the report & J. George (DHO) violated due process & failed to properly complete the alleged DHO report, citing incorrect information & no report number, along with, it was never provided to me. See pg. 3.

Requested Relief:   1. Expunge incident report
                    2. Correct custody scoring
                    3. Reinstate 3621(e)
                    4. Immediate release
                    5. Provide BP-11, citing false imprisionment along with clear & persistent pattern of illegal activit

_FEB. 20TH, 2020_                                    _C—A.T___

DATE                                              SIGNATURE OF REQUESTER

**Part B—RESPONSE**

| | |
|---|---|
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel.  Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C—RECEIPT**

                                              CASE NUMBER: _____

| Return to: | | | |
|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

                                                        BP-230(13)

TRULINCS 18601033 - THORSON, COREY A - Unit: ASH-J-A

*EXHIBIT 9*

---

FROM: 18601033
TO:
SUBJECT: BP-10, Regional Appeal - Thorson, Corey #18601-033
DATE: 02/15/2020 07:58:57 PM

February 20th, 2020                     Incident Report Appeal Continuation Page
REGIONAL DIRECTOR:
1. Referring to "Statement of Facts", BP-10 Form. It should be noted, I have the May 31st, 2019 call with several B.O.P. Employees & Half -Way House Employees "recorded", in my possession, at home. Also note, "all" interactions with B.O.P. Staff & Half-Way House Staff were recorded from March 2019 until June 19th, 2019 over the phone, and in person. As a "Insurance Professional" I felt the need to cover myself. Therefore, everything recorded was in accordance with Law.
2. June 2019 I met with B.O.P. Employee, J. Hierstetter, Community Treatment Specialist, Mid-Atlantic Region. We met in Nashville, Tennessee. Mr. Hierstetter stated during a recorded conversation "In my (15) years with the BOP I've never witnessed or been part of a meeting with a inmate that had that many 'high ranking' staff involved". "I'm not saying you don't have a argument, it is the way you relayed the message"."You are a pain in my ass". I respectfully request you speak with Mr. Hierstetter, confirm said conversation prior to granting this BP-10.
3. In the middle of May 2019 while speaking with BOP Employee, Mike Connell - Kansas City, Kansas regarding my "Home Passes & RRM Michelle Fulgum" Mr. Connell became 'VERY' upset as our conversation escalated. Mr. Connell ended up yelling, clearly stating on that recorded call, ("I "WAS" YOUR ONLY FUCKING ALLY, YOU FUCKING THUG INMATE") then he hung up. Again, I respectfully request contacting Mr. Connell to confirm our conversation, prior to granting this BP-10.
4. As stated on the BP-10 Form, I was denied a Discipline Hearing. The procedural protections set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), previously listed in Sandin v. Conner, 515 U.S. 472, 477-78, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995) The UNITED STATES SUPREME COURT has articulated certain minimum procedures the prison officials must follow before taking away a inmates good time credit during "disciplinary proceedings." Obviously, Staff didn't abide by those procedures. Staff didn't even provide of copy of the report to me as the report reflects. I was never aware a report existed, or a hearing ocurred. According to "Sandin", "a prisoner is entitled to the protections of due process only when a deprivation imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life" OR "will inevitably affect the duration of his sentence" Id 484-87. This fits my situation, meaning Missed Surgical Procedures, Pain & Suffering, Deterioration. Again, the "Alleged Incident" report was never delivered to me, in addition no hearing was conducted with me present. This was a "PERSONAL ACT WITH INTENT TO HARM"
5. After the Incident Report, I was not 3621(e) RDAP revoked. I was revoked "ONE" DAY before G.I. Surgery, June 19th, 2019 and "EIGHT" days before a 3rd Achilles Tendon Surgery. Thus "MOTIVE" to attack/delay/injure. I remained in Good Standing with RDAP, engaged in treatment after this alleged incident. Per BOP Policy I had completed RDAP Follow-Up anyway, with (7) months of follow-up after graduating RDAP, (2) Months at Morgantown, (5) Months at the Half-Way House. My Community Treatment Specialist had referred me to a local therapist, to abide by my "Special Conditions of Release"....However, (20) Days after the alleged DHO Hearing I was arrested by the US Marshal's. Again, right before scheduled surgery, simply because I pissed Half-Way House Staff off, and pissed off the RRM Michelle Fulgum. I was kept in the SHU & Transit from June 19th, 2019 to December 5th, 2019. I "had and still have" a severe G.I. Bleed, I bleed badly. My Achilles is still torn - See attached Records. I am awaiting a 3rd operation some (8 or 9) months later, and it is still not scheduled, regardless I will not allow the BOP to ever touch me again medically. RRM Fulgum is directly responsible for this Alleged Kangaroo Discipline Hearing. While my medical 'might' be a separate issue, this "Alleged Incident" has caused havoc, and is a "Direct Result" of many Inmate & Constitutional Violations. This is a "illegal pattern" by employees is easily proved through documentation and recordings. All this, done with intent to harm simply because I pissed off the RRM Michelle Fulgum, S. Rimmer, M. Connell.
6. With factual support I am able to compound the numerous violations of Due Process and Inmate Rights. All pertaining to this Incident Report, Loss of 3621(e), Loss of Medical Care, and Constitutional Violations. See Blackmore v. Kalamazoo County, 390 F. 3d. 890, 898 (6th Cir 2004) RRM Michelle Fulgum imposed a 3621(e) revoke that caused substantial pain & suffering, created risk, and caused deterioration. There is "sufficient evidence for reasonable minds to find 'A DIRECT CASUAL LINK' Between RRM Michelle Fulgum and other BOP Employees listed pertaining to this Incident Report and my Medical Issues. Their actions, customs, and policies, along with Thorson's 'denial to surgical serious medical needs/surgical procedures' clearly denied Thorson the right to adequate Medical Care". See Ford, 535 F. 3d at 497 (Quoting Bryan Cty., 520 U.S. at 404). This Incident Report signed some (6) weeks after the alleged incident stems from pissing off the mention BOP Employees as stated many times. As you will see (Page 3) the Incident Report was never provided to me, nor does it have a Incident Report Number.
7. Thorson has a "Mountain of Evidence" prevailing under the "Inaction Theory", citing "Illegal Activity" referenced to the Incident Report, the 3621(e), and denial of medical care due to this incident report. The "Illegal Activity" at issue here is activity that violates the 8th Amendment's prohibition on deliberate indifference to the serious medical needs of an incarcerated person. See Estelle, 429 U.S. at 104-05.
8. My "Requested Relief" is clear. Due to the BOP "Illegal Activity" clause, I have copied several officals and entities.
Corey A. Thorson #18601-033

*EXHIBIT 10*

## Individualized Reentry Plan - Program Review (Inmate Copy)
### Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: THORSON, COREY A  18601-033

**SEQUENCE: 02060087**
**Team Date: 12-23-2019**

*FOLLOW-UP*
*RDAP*
*COMPLETE*
*BRIX*

| | | | | |
|---|---|---|---|---|
| Facility: | ASH  ASHLAND FCI | | Proj. Rel. Date: | 07-30-2020 |
| Name: | THORSON, COREY A | | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 18601-033 | | DNA Status: | FOR07592 / 06-22-2017 |
| Age: | 44 | | | |
| Date of Birth: | 08-03-1975 | | | |

**Detainer**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ASH | A/O | FCI ADMISSION & ORIENTATION | 12-05-2019 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ASH | ESL HAS | ENGLISH PROFICIENT | 06-19-2017 |
| ASH | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-19-2017 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FOR | C | PSYCHOLOGY:COGNITIVE SKILLS | 09-21-2017 | 06-19-2019 |
| MRG | C | RPP2- EMPLOYMENT | 10-19-2018 | 10-19-2018 |
| MRG | C | RPP3 - PERSONAL FINANCE | 10-19-2018 | 10-19-2018 |
| MRG | C | RPP5 - RELEASE REQ/PROCEDURES | 10-19-2018 | 10-19-2018 |
| MRG | C | RPP4- LIV COM | 10-19-2018 | 10-19-2018 |
| MRG | C | RPP5 - RELEASE REQ/PROCEDURES | 10-19-2018 | 10-19-2018 |
| MRG | C | RPP6 - CONTENDING WITH CULTURE | 10-19-2018 | 10-19-2018 |
| MRG | C | COMPUTER 2PM 12:00-3:00/ SPAHR | 06-17-2018 | 10-14-2018 |
| MRG | C | TOUCHTYPING- MR. SPAHR | 09-09-2018 | 10-14-2018 |
| MRG | C | RPP1 - AIDS/DISEASE PREVENT | 05-15-2018 | 05-15-2018 |
| FTW | C | PARENTING CLASS ON WED.1-3 PM | 01-31-2018 | 03-07-2018 |
| FOR | W | CONVERSATIONAL SPANISH 6-7P M | 07-24-2017 | 09-22-2017 |
| FOR | C | RPP STRESS MGT 12-1P W CORE 1 | 07-07-2017 | 09-22-2017 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 06-26-2017 |
| CARE2 | STABLE, CHRONIC CARE | 10-20-2017 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 12-03-2019 |
| NO PAPER | NO PAPER MEDICAL RECORD | 06-19-2017 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-12-2019 |
| SOFT SHOES | SOFT SHOES ONLY | 12-03-2019 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-12-2019 |

*RDAP Follow-up Complete*

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP FAIL O | RESIDENT DRUG TRMT FAIL-OUTCOM | 07-10-2019 |
| ED WAIT RV | DRUG EDUCATION WAIT-RQ VIOLAT | 09-09-2019 |
| FOL COMP | FOLLOWUP SERVICES COMPLETE | 01-17-2019 |
| INELIGIBLE | 18 USC 3621 RELEASE INELIGIBLE | 07-10-2019 |
| MH CMTX P | MENTAL HEALTH COMM TRTMNT PART | 02-01-2019 |

*FSA GTC UPDATE*
*JUNE 2019*
*- NEEDS TO BE REFIGURED*

Sentry Data as of 12-20-2019      Individualized Reentry Plan - Program Review  (Inmate Copy)      Page 1 of 3

*M. Brin - IT*



*South Central Regional Office*

*U.S. Armed Forces Reserve Complex*
*344 Marine Forces Drive*
*Grand Prairie, Texas 75051*

October 20, 2020

## VIA CERTIFIED MAIL # 7014 1820 0000 1511 2557

Corey Thorson
Reg. No. 18601-033
5237 Steven Dr.
Paducah, Kentucky 42001

Re:    Administrative Tort Claim Number TRT-SCR-2018-05952

Mr. Thorson:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act, Title 28, United States Code, Section 2672 *et seq.*, and authority granted by Title 28, Code of Federal Regulations, Section 0.172. You claim government liability in the amount of two million dollars and no/100 ($2,000,000.00) for alleged personal injury.

The Federal Tort Claims Act § 2672 delegates to each Federal agency the authority to consider, determine, and settle any claim for money damages against the United States for loss of personal property or injury caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his or her office or employment.

You allege that in May 2017, while in the custody of the United States Marshals Service, you tore your Achilles tendon and were not provided corrective surgery. You further allege that you were not provided appropriate care for your Achilles tendon while in the custody of the Bureau of Prisons from June 2017 through April 2018.

There is no evidence you sustained any injury caused by the negligent or wrongful act or omission of any United States employee acting within the scope of employment. Further, BOP is not liable for any alleged negligence of independent contractors. Accordingly, your claim is denied.

SENSITIVE BUT UNCLASSIFIED

EXHIBIT B



Thorson, Corey
Reg. No. 18601-033
TRT-SCR-2018-05952
Page 2

You are advised that if you are dissatisfied with our determination in this matt
you are afforded six months from the date of the mailing of this communication
within which to bring suit in the appropriate United States District Court.

Sincerely,

Candice E. Geller
Deputy Regional Counsel